IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELVIN POLLARD, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-235J |
| | ) | Judge Kim R. Gibson/ |
| JOHN YOST, Warden, FCI Loretto, | ) | Magistrate Judge Amy Reynolds Hay |
| | ) | |
| Respondent | ) | |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully recommended that the habeas petition, ostensibly filed pursuant to 28 U.S.C. § 2241, be dismissed.

REPORT

In the Northern District of Illinois, Melvin Pollard ("Petitioner") was convicted, pursuant to a plea agreement, of a drug possession offense with intent to deliver. On August 22, 2002, he was sentenced to 194 months of incarceration. His sentence was enhanced pursuant to U.S.S.G. Manual §4B1.1 as a "career offender." This enhancement was based on a prior 1983 Ohio state conviction for drugs.[1] The "career offender" designation is reserved for individuals who had

---

[1] Petitioner was convicted of violating Ohio Revised Code § 2925.03(A)(6). Dkt. [1-2] at 8. Section 2925.03(A)(6) provided at the time as follows:

(A) No person shall knowingly do any of the following:

. . . .
(6) Possess a controlled substance in an amount equal to or exceeding three times the bulk amount.

State v. Williams, No. 7609, 1983 WL 4973, at *1 (Ohio App. Sept. 30, 1983). Furthermore, "[u]nder R.C. [i.e., Revised Code] 2925.01(E)(8), 'bulk amount' of any drug is defined as either 120 grams or 30 times the maximum daily dose[.]" State v. Seger, No. C-810574, 1982 WL 8596, at *1 (Ohio App. June 23, 1982). Essentially, the possession of a large amount of drugs under the Ohio state statute permits a

prior convictions for drug offenses which involved an element of selling or distributing drugs to others or an intent to do so. The career offender designation does not encompass mere drug possession offenses without the requisite showing of an intent to distribute.[2]

Only after Petitioner had exhausted his appeals and only after he had filed a Section 2255

---

presumption of intent to distribute and is punished as such. See, e.g., State v. Carpenter, No. 7-88-1, 1989 WL 22030, at *6 (Ohio App. March 9, 1989), wherein the Court explained that

> We conclude that the legislature established by its enactment of R.C. 2925.03 its policy that the sale or intent to sell controlled substances constitutes trafficking and should be prohibited, and its policy and intent that possession for sale shall be presumed by possession of a specified minimum large quantity of a particular controlled substance. . . .

See also Gibbs v. United States, 3 Fed.Appx. 404, 406 (6th Cir. 2001), *in effect abrogated by*, United States v. Montanez, 442 F.3d 485 (6th Cir. 2006). The Gibbs court noted that

> Simple possession constitutes a violation of Ohio Revised Code § 2925.11, which is titled "Drug Possession Offenses." Section 2925.03 relates to illicit drug trafficking, while § 2925.11 is aimed at users and not at sellers. *State v. Goodnight*, 52 Ohio App.2d 333, 370 N.E.2d 486, 488 (Ohio App. 1977). The statutory scheme reveals that, had Gibbs's crime been one that involved simple possession for personal use, he would have had a valid affirmative defense to his prosecution under § 2925.03. In the case where a defendant possesses a bulk amount of a controlled substance, "if the defense of personal use is proven, the defendant cannot be found guilty under R.C. 2925.03." *State v. Davis*, 16 Ohio St.3d 34, 476 N.E.2d 655, 656 (Ohio 1985).

[2] See, e.g., Gibbs v. United States, 3 Fed.Appx. 404, 405 (6th Cir. 2001) wherein the Court explained:

> The Guidelines provide that a defendant is a career offender if: (1) he was at least eighteen when he committed the offense of conviction; (2) the offense of conviction is a felony that is a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of crimes of violence or controlled substance offenses. § 4B1.1. The Guidelines further provide that a "controlled substance offense" includes any felony offense, state or federal, that involves the distribution of a controlled substance. § 4B1.2(b).

See also United States v. Coteat, 133 Fed.Appx. 177, 178 (6th Cir. 2005)("The Guidelines define a 'controlled substance offense' as 'an offense under federal or state law ... that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense.' U.S. Sentencing Guidelines Manual § 4B1.2(b) (2003).").

motion, which was denied, the Court of Appeals for the Sixth Circuit held that the Ohio statute under which Petitioner was convicted in 1983 constituted a mere possession offense and not the requisite "possession plus intent to distribute" kind of crime and, hence, could not qualify as a predicate offense in satisfaction of the career offender designation. As a result, Petitioner filed several motions in the court of conviction, i.e., the Northern District of Illinois, raising the claim which Petitioner now raises herein, albeit without success.

Subsequently, on September 24, 2007, Petitioner filed the instant Section 2241 petition, seeking not to attack the execution of his sentence but to attack the sentence as imposed by the Northern District of Illinois Court. Petitioner is currently incarcerated within this District at FCI-Loretto and has named his custodian there as respondent. Because Petitioner has failed to carry his burden to show that Section 2255 is inadequate or ineffective, he may not utilize this Section 2241 petition to attack the validity of his sentence as imposed and hence, the court lacks jurisdiction over this Section 2241 petition.

**Discussion**

Petitioner seeks to attack the validity of his sentence as imposed. However, as a general rule, attacks on the validity of the conviction and/or on the validity of the sentence as imposed (in contradistinction to a challenge to the sentence as administered, e.g., the application of credits to the sentence) are properly brought under a Section 2255 petition. In re Nwanze, 242 F.3d 521, 523 (3d Cir. 2001) ("ordinarily a petitioner should advance a challenge to a conviction and sentence through the means of a motion under section 2255 in the sentencing court.").

In contrast, as a general rule, a petition under Section 2241 is properly brought where the petitioner is seeking to challenge the carrying out or the execution of his sentence (e.g., the calculation of good time credits, the running of the sentence, the calculation of the ending date,

etc.). Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Bennet v. Soto, 850 F.2d 161 (3d Cir. 1988), superceded by statute on other grounds as recognized by, Callwood v. Enos, 230 F.3d 627 (3d Cir. 2000); Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996). This is only a general rule and there are instances where a Section 2241 petition that attacks the validity of the conviction and/or attacks the sentence as imposed, as Petitioner herein does, may properly be brought. However, a Section 2241 petition that attacks the validity of the conviction and/or the validity of the sentence as imposed may only be brought after it has been shown that Section 2255 is an inadequate or ineffective remedy. See 28 U.S.C. § 2255 (5th paragraph); In re Dorsainvil, 119 F.3d 245, 247 (3d Cir. 1997). The statutory provision governing this case provides in pertinent part that

> [a]n application for a writ of habeas corpus [i.e., a Section 2241 petition[3]] in behalf of a prisoner who is authorized to apply for relief by motion [i.e., Section 2255 petition] pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255.[4] Thus, before petitioners can avail themselves of a Section 2241 petition in order to attack the validity of their conviction and/or the sentence, as imposed, they must show that section 2255 is inadequate or ineffective. Pack v. Yussuf, 218 F.3d 448, 452 (5th Cir. 2000)

---

[3] Alamin v. Gerlinski, 30 F.Supp.2d 464, 467 (M.D. Pa. 1998)(construing the language "application for a writ of habeas corpus to mean a Section 2241 petition, noting that the above quoted passage "allows the filing of a habeas (i.e., a 2241) petition when relief under section 2255 'is inadequate or ineffective to test the legality of [the] detention.'" ); United States v. Barrett, 178 F.3d 34, 49 (1st Cir. 1999)(describing this quoted passage as "the limitation on the use of § 2241 petitions by federal prisoners that is set forth in § 2255").

[4] This passage which permits an attack on the conviction or on the sentence, as imposed, via a Section 2241 petition where a Section 2255 petition would be inadequate or ineffective is commonly referred to as the "savings clause." Pack v. Yussuf, 218 F.3d 448, 452 (5th Cir. 2000), or as the "safety valve." United States v. Brooks, 230 F.3d 643, 647 (3d Cir. 2000).

4

("Accordingly, a section 2241 petition that seeks to challenge a federal sentence or conviction–thereby effectively acting as a section 2255 motion–may only be entertained when the petitioner establishes that the remedy provided for under section 2255 is inadequate or ineffective.") (citations omitted). It is the burden of the Petitioner to prove that Section 2255 is inadequate or ineffective. <u>Charles v. Chandler</u>, 180 F.3d 753, 756 (6th Cir. 1999)("It is the petitioner's burden to establish that his remedy under § 2255 is inadequate or ineffective.")(per curiam).

It is true that Petitioner cannot meet the gate keeping requirements of Section 2255(h)[5] and, therefore cannot file a second Section 2255 motion, because he is not making a claim of newly discovered evidence as required under Section 2255(h), nor is he making a claim of a new constitutional ruling by the United States Supreme Court which that court mandates to be retroactive. Hence, he cannot bring a second Section 2255 motion by which to raise the instant claim. However, as repeated time and again, the mere fact that a petitioner is barred from now bringing claims in a second or successive Section 2255 petition because he cannot pass through the gatekeeping requirements does not satisfy a petitioner's burden to show that Section 2255 is inadequate or ineffective. <u>In re Dorsainvil</u>, 119 F.3d at 251 ("We do not suggest that § 2255 would be 'inadequate or ineffective' so as to enable a second petitioner to invoke § 2241 merely

---

[5] The gate keeping provision is found in 28 U.S.C. Section 2255(h) as follows:

(h) A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain--
    (1) newly discovered evidence that, if proven and viewed in light of the
    evidence as a whole, would be sufficient to establish by clear and
    convincing evidence that no reasonable factfinder would have found the
    movant guilty of the offense; or
    (2) a new rule of constitutional law, made retroactive to cases on
    collateral review by the Supreme Court, that was previously unavailable.

because that petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255." ); Pack v. Yussuf, 218 F.3d at 453. ("a section 2255 motion cannot become 'inadequate or ineffective,' thus permitting the use of [section] 2241, merely because a petitioner cannot meet the AEDPA second or successive requirements. To hold otherwise would flout Congress's obvious intent to give meaning to these procedural requirements. A ruling that the section 2255 remedy was inadequate or ineffective, such that a petitioner could invoke section 2241, simply because the petitioner's prior section 2255 motion was unsuccessful, or barred, or because he could not file another motion, would render those procedural requirements a nullity and defy Congress's clear attempt to limit successive habeas petitions.")(internal quotations and citations omitted); Charles v. Chandler, 180 F.3d 753, 755 (6th Cir. 1999) ("Significantly, the § 2255 remedy is not considered inadequate or ineffective simply because § 2255 has already been denied . . . or because the petitioner has been denied permission to file a second or successive motion to vacate. . . . .") (citations omitted). Although showing that one cannot pass through the gatekeeping requirements may not be a sufficient condition in order to show Section 2255 is inadequate or ineffective, it would appear to be a necessary condition to establishing such, otherwise, if one can pass through the gatekeeping requirements, then one can bring a second or successive Section 2255 motion and there would be no need to attempt to bring a Section 2241 petition, except, perhaps, in order to avoid the other restrictive provisions of Section 2255, such as, the one year statute of limitations.

The only suggestion by Petitioner as to why Section 2255 is inadequate or ineffective is that he could not now bring a second or successive Section 2255 petition. But as explained below, the cases demonstrate such a showing is not sufficient for the Petitioner to carry his

because that petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255." ); Pack v. Yussuf, 218 F.3d at 453. ("a section 2255 motion cannot become 'inadequate or ineffective,' thus permitting the use of [section] 2241, merely because a petitioner cannot meet the AEDPA second or successive requirements. To hold otherwise would flout Congress's obvious intent to give meaning to these procedural requirements. A ruling that the section 2255 remedy was inadequate or ineffective, such that a petitioner could invoke section 2241, simply because the petitioner's prior section 2255 motion was unsuccessful, or barred, or because he could not file another motion, would render those procedural requirements a nullity and defy Congress's clear attempt to limit successive habeas petitions.")(internal quotations and citations omitted); Charles v. Chandler, 180 F.3d 753, 755 (6th Cir. 1999) ("Significantly, the § 2255 remedy is not considered inadequate or ineffective simply because § 2255 has already been denied . . . or because the petitioner has been denied permission to file a second or successive motion to vacate. . . . .") (citations omitted). Although showing that one cannot pass through the gatekeeping requirements may not be a sufficient condition in order to show Section 2255 is inadequate or ineffective, it would appear to be a necessary condition to establishing such, otherwise, if one can pass through the gatekeeping requirements, then one can bring a second or successive Section 2255 motion and there would be no need to attempt to bring a Section 2241 petition, except, perhaps, in order to avoid the other restrictive provisions of Section 2255, such as, the one year statute of limitations.

The only suggestion by Petitioner as to why Section 2255 is inadequate or ineffective is that he could not now bring a second or successive Section 2255 petition. But as explained below, the cases demonstrate such a showing is not sufficient for the Petitioner to carry his

burden of proving that Section 2255 is inadequate or ineffective so that he can properly proceed under Section 2241.

Petitioner however contends that he comes within the ambit of Dorsainvil and thereby shows that Section 2255 is inadequate or ineffective. Dorsainvil does not compel this court to conclude that Petitioner has established the inadequacy of Section 2255.

The facts of Dorsainvil are well known. Mr. Dorsainvil was convicted, *inter alia*, of using a gun in connection with a drug crime. He was so convicted notwithstanding that he did not "use" the gun but the gun was merely present in the car from which the drugs were to be bought. Subsequent to him exhausting his appeals and a Section 2255 motion, the Supreme Court, in Bailey v. United States, 516 U.S. 137 (1995), construed the criminal statute under which Dorsainvil was convicted to exclude from the ambit of the statute mere presence of a gun at a drug crime, thus arguably rendering Dorsainvil actually innocent of the crime of **using** a gun in connection with a drug offense.

Post Bailey, Mr. Dorsainvil brought a motion in the Third Circuit Court, seeking leave to file in the District Court a second or successive Section 2255 motion. The Court of Appeals denied him leave to do so, noting that he did not come within the gatekeeping requirements of AEDPA. However, the Court stayed its ruling and appointed counsel for Mr. Dorsainvil and requested several questions be briefed. Ultimately, the Court concluded that Mr. Dorsainvil had established the inadequacy of Section 2255 so as to bring his Section 2241 petition.

The Court in Dorsainvil elaborated upon the nature of the circumstances justifying a petitioner proceeding under Section 2241 to attack his conviction in these words:

> Dorsainvil argues that the safety-valve provision of § 2255 covers his situation because he seeks to challenge his conviction on a second § 2255 petition based on an intervening decision by the Supreme Court. A similar case "involv[ing] the availability of collateral relief from a federal criminal conviction based upon an

intervening change in substantive law" came before the Supreme Court in Davis v. United States, 417 U.S. 333, 334 (1974). In that case, the Court stated that a Supreme Court decision interpreting a criminal statute that resulted in the imprisonment of one whose conduct was not prohibited by law "presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id. at 346 (internal quotations omitted). The Court held that "if [petitioner's] contention is well taken, then [his] conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and present(s) exceptional circumstances that justify collateral relief under § 2255." Id. at 346-47 (internal quotations omitted); see also United States v. Addonizio, 442 U.S. 178, 186-87 (1979) (discussing Davis and observing that a refusal to have vacated his sentence "would surely have been a 'complete miscarriage of justice, 'since the conviction and sentence were no longer lawful"). The decision in Davis that § 2255 was broad enough to cover a defendant imprisoned for a crime that an intervening decision negates does not govern Dorsainvil's motion before us *only* because he has brought his claim for relief on a second § 2255 motion [subject to the gatekeeping provisions of AEDPA].

119 F.3d at 250-51.

Essentially, as recognized by other courts, the narrow holding of Dorsainvil permits a Section 2241 petition to attack the validity of the conviction only where the petition raises a claim of actual innocence of the crime. See, e.g., Reyes-Requena v. United States 243 F.3d 893, 904 (5th Cir. 2001) ("To capture the idea that the incarceration of one whose conduct is not criminal 'inherently results in a complete miscarriage of justice', most circuits have included an actual innocence component in their savings clause tests. *See, e.g., ... Dorsainvil*, 119 F.3d at 251 ('prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate').")(internal quotations and some citations omitted); Charles v. Chandler, 180 F.3d 753, 757 (6th Cir. 1999) ("*Bousley* makes it clear that the claims made by the petitioners in the *Davenport, Triestman,* and *Dorsainvil* cases were really just claims of 'actual innocence,' and the practical effect of the holdings in those cases was to permit a petitioner to make a claim of 'actual innocence' that was otherwise barred by AEDPA....

No circuit court has to date permitted a post-AEDPA petitioner who was not effectively making a claim of 'actual innocence' to utilize § 2241 (via § 2255's 'savings clause') as a way of circumventing § 2255's restrictions on the filing of second or successive habeas petitions."); In re Jones, 226 F.3d 328, 333 n.3 (4th Cir. 2000) ("Importantly, neither *Davenport, Triestman,* nor *Dorsainvil* holds that § 2255 is inadequate or ineffective on the basis that the movant's *Bailey* claim would satisfy pre-AEDPA abuse of the writ standards. Rather, these courts have focused on the more fundamental defect presented by a situation in which an individual is incarcerated for conduct that is not criminal but, through no fault of his own, has no source of redress."); United States v. Lorentsen, 223 F.3d 950, 953-54 (9th Cir. 2000 ) (referring to the holding of several cases, including Dorsainvil that deal with the savings clause, the court stated that "[a]lthough the precise formulations vary, each of those cases holds, in essence, that a federal prisoner who is 'actually innocent' of the crime of conviction, but who never has had 'an unobstructed procedural shot' at presenting a claim of innocence, may resort to § 2241 if the possibility of relief under § 2255 is foreclosed.").

Thus, whatever the precise holding of Dorsainvil, it appears that the *sine qua non* of coming within the so-called Dorsainvil exception is a claim of actual innocence. While a claim of actual innocence appears to be a necessary condition for coming within the narrow Dorsainvil exception, it does not appear to be a sufficient condition because run-of-the-mill actual innocence claims *a la* Schlup v. Delo, 513 U.S. 298, 327 (1995) or Herrera v. Collins, 506 U.S. 390 (1993) are not sufficient. See, e.g., Galloway v. Samuels, No. 07-3257, 2007 WL 2904196, *4 (D.N.J., Oct. 3, 2007)("Under the circumstances presented here, Petitioner's claim of 'actual innocence' is not sufficient to overcome the gatekeeping mechanism of § 2255." ). It must be not only a claim of actual innocence but a claim of actual innocence coupled with the inability to have

9

brought the claim before because of a change in the construction of the criminal statute by a court having the last word on the proper construction of the statute, which change rendered what had been thought to be criminal within the ambit of the statute, no longer criminal.  See, e.g., Walker v. Williamson, 235 Fed.Appx. 888, 889 (3d Cir. 2007)("Further, the 'safety valve' by which a prisoner may bypass § 2255 when it is 'inadequate or ineffective to test the legality of his detention,' is extremely narrow and applies to the unusual situation in which a prisoner had no prior opportunity to challenge his conviction for a crime later deemed to be non-criminal by an intervening change in law.  *See Okereke*, 307 F.3d at 120 (*citing In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997)). Such is not the case here.").  While this seems to be the narrow rule established in Dorsainvil, i.e., one who brings such a claim of actual innocence based on an intervening change of the law which occurred after a Section 2255 has been decided or the time for filing such has run out, has established the inadequacy of Section 2255, Dorsainvil does not answer the question of whether this is the **only** kind of claim of actual innocence that so establishes the inadequacy of Section 2255.

The precise holding of Dorsainvil is not entirely clear.  It can be broadly summarized to be that if a miscarriage of justice were to result should a Section 2255 motion not be available to raise a claim of actual innocence, then Section 2255 is thereby inadequate or ineffective and resort to Section 2241 may be had.  However, what constitutes a miscarriage of justice is not readily defined nor definable and not a standard of easy applicability for the district courts.  Cf. Wofford v. Scott, 177 F.3d 1236, 1243 (11th Cir. 1999)(criticizing the Second Circuit's standard for determining inadequacy of Section 2255 as being "'too indefinite' to meet 'the needs of practical judicial enforcement.'").  Accordingly, the court understands the holding of Dorsainvil to be narrow and as follows: where a Supreme Court decision construes a federal criminal statute

10

so as to render conduct, which the federal convict was charged with and found guilty of under that statute, no longer criminal, and so the federal convict is actually innocent of the crime, and that Supreme Court decision comes at a time after the convict's direct appeals have been exhausted and after a Section 2255 motion has been filed or after the time for filing a Section 2255 motion has expired, such that the convict could not have previously raised the claim of actual innocence, then Section 2255 is inadequate or ineffective so as to permit such a convict to properly bring a Section 2241 petition.[6]

To so state the rule/holding of Dorsainvil is to see that Petitioner does not come within the rule. Instantly, Petitioner is not claiming the benefit of a United States Supreme Court decision construing a federal criminal statute that renders conduct of which he was accused non criminal. He is not making a claim, and, given that he pleaded guilty to the crime, he cannot make a claim that he is innocent of the crime for which he was convicted.

However, there are some analogies Petitioner can make, (even if he does not do so, or at least, not in an explicit way), to Dorsainvil, even though the court finds such insufficient to establish the inadequacy of Section 2255. Essentially, there are two elements of Petitioner's case that are analogous to Dornsainvil. First, although Petitioner is not claiming actual innocence of the federal **crime** for which he was convicted, he is making a claim of actual innocence of the sentence imposed, i.e., he is claiming that he is not "guilty of" the career criminal enhancement, which is to say that he should not have been sentenced to 194 months (as permitted under the career criminal enhancement) but should only have been sentenced to approximately 140 months.

---

[6] Cf. Wofford v. Scott, 177 F.3d 1236, 1243 (11th Cir. 1999)("The holding in *Davenport*, [147 F.3d 605, 611 (7th Cir. 1998)], read against the facts of that case, is limited to circumstances in which a Supreme Court decision has changed the law of a circuit retroactively in such a way that a prisoner stands convicted for a nonexistent offense, and the prisoner had no reasonable opportunity for a judicial remedy of that fundamental defect before filing the § 2241 proceeding.").

Courts have entertained claims of "actual innocence of the sentence" in the capital sentencing area, however the "actual innocence of the sentence" claim has not been extended, at least by the Supreme Court to non-capital sentences. See, e.g., Dretke v. Haley, 541 U.S. 386 (2004). Nevertheless, other federal courts have extended the notion outside of the capital sentencing area. See, e.g., Cristin v. Wolfe, 168 Fed.Appx. 508, 510 n.2 (3d Cir. 2006); Cristin v. Brennan, 281 F.3d 404, 421-22 (3d Cir. 2002); United States v. Mikalajunas, 186 F.3d 490, 494 (4th Cir. 1999) ("In *United States v. Maybeck*, 23 F.3d 888, 892-94 (4th Cir. 1994), a panel of this court ruled that the actual innocence exception may be applied in § 2255 to noncapital sentencing proceedings and that Maybeck was actually innocent of being a career offender, see U.S.S.G. § 4B1.1, because one of the predicate offenses necessary to qualify him for career offender status actually was not a crime of violence."). Hence, similar to Dorsainvil, Petitioner makes a claim of actual innocence, just not of the crime, rather, innocence of the sentence.

Petitioner's case is similar to Dorsainvil for another reason, i.e., the Montanez decision of the Court of Appeals for the Sixth Circuit which construed the Ohio statute under which Petitioner was convicted in 1983, did not occur until after Petitioner had exhausted his appeals and until after this Section 2255 motion had been decided. Hence, similar to Dorsainvil, Petitioner could not have previously raised the claim he raises herein.

Hence, this Court is squarely faced with the question of whether one who claims to be actually innocent of the sentence and who could not have raised the issue earlier than he did due to an intervening construction of a statute, has satisfied his burden to show that Section 2255 is inadequate or ineffective. Dorsainvil does not answer, and more importantly, does not purport to answer this precise question. Dorsainvil, 119 F.3d at 252 ("Our holding that in this circumstance § 2255 is inadequate or ineffective is therefore a narrow one. In the posture of the case before us,

we need go no further to consider the other situations, if any, in which the 'inadequate or ineffective' language of § 2255 may be applicable."). Confronted with the facts of this case, it is for this court to confront the question not answered in Dorsainvil, to wit, in the circumstances confronting this court now, has Petitioner carried his burden to show that Section 2255 is inadequate or ineffective so as to be able to bring this Section 2241 petition. For the following reasons, the court finds Petitioner has not carried his burden to show that he is entitled to have this case considered under Section 2241.

First, Petitioner fails to carry his burden because he has waived his right to bring any such challenge in his plea agreement.[7] Because in his plea agreement Petitioner waived his right to "challenge his sentence or the manner in which it was determined in any collateral attack[,]" and because Petitioner has not met his burden to show that the waiver was invalid, the petition should be dismissed. Parke v. Raley, 506 U.S. 20, 31 (1992)("Our precedents make clear, however, that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant."); Von Moltke v. Gillies, 332 U.S. 708, 737 (1948)(Burton, J.,

---

[7] In his plea agreement, Petitioner agreed that

> 13. The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which the sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to his waiver or its negotiation.

U.S.A. v. Pollard, No. 1:02-cr-020 (N.D. Ill. Dkt. 18 at 10, ¶ 13)

13

dissenting)("In now attacking collaterally the unappealed and deliberate judicial proceedings of 1944, a heavy burden of proof rests upon the petitioner to establish the invalidity of her original plea and waiver."); Lowe v. Bobby, No. 1:05 CV 2920, 2008 WL 728365, at *9 (N.D. Ohio March 14, 2008)("Once a waiver is effectuated, the burden is on the petitioner to demonstrate that the waiver of the jury trial was prima facie invalid."); U.S. v. McGoff-Lovelady, No. 06-20060 -03-JWL, 2008 WL 544237, at *4 (D.Kan. Feb. 22, 2008) ("In deciding the enforceability of a plea agreement waiver of post-conviction rights, the courts apply a three prong test: (1) whether the issues in dispute come within the scope of the waiver; (2) whether the defendant knowingly and voluntarily waived his rights; and (3) whether enforcement of the waiver would result in a miscarriage of justice. The Tenth Circuit has held that [the criminal] defendants have the burden of demonstrating from the record that a waiver was not knowing and voluntary. . . .") (some citations omitted). Accordingly, the petition should be dismissed on this ground alone.

Second, even if he had not waived his right to bring this claim, Petitioner has not established Section 2255's inadequacy because his situation does not establish the "miscarriage of justice" that the courts apparently seek to avoid by permitting Section 2241 petitions to be brought. Petitioner fails to establish a miscarriage of justice for at least two reasons. First, the rule appears to be that claims of being actually innocent of the sentence are not sufficient to establish the inadequacy of Section 2255. See, e.g., Kinder v. Purdy, 222 F.3d 209, 213-14 (5th Cir. 2000). In the Kinder case, the court found that the petitioner could not proceed by way of a Section 2241 and held that

> Kinder's argument that he is actually innocent of being a career offender in light of *Bellazerius*, however, is not the type of argument that courts have recognized may warrant review under § 2241. Recent cases examining the scope of § 2255's savings clause have done so because of the Supreme Court's decision in *Bailey v.*

14

> *United States*, 516 U.S. 137 (1995). *See In re Davenport*, 147 F.3d 605 (7th Cir. 1998); *Triestman*, 124 F.3d 361; *In re Dorsainvil*, 119 F.3d 245 (3d Cir. 1997); *In re Vial*, 115 F.3d 1192 (4th Cir. 1997) (en banc). Where the petitioner's case has been viewed as falling within the savings clause, it was in part because the petitioner arguably was convicted for a nonexistent offense. *See Davenport*, 147 F.3d at 611; *Dorsainvil*, 119 F.3d at 251; *Triestman*, 124 F.3d at 363. Thus, in each case, the petitioner could claim he was actually innocent of the crime of which he was convicted. In contrast, Kinder argues that, under *Bellazerius*, his conviction of conspiracy cannot support application of the Guidelines' career offender provisions. He makes no assertion that he is innocent of the crime for which he was convicted.

Id. (footnotes omitted). See also Little v. Hamidullah, 177 Fed.Appx. 375 (4th Cir. 2006) (rejecting claim of actual innocence of sentence enhancement); Green v. Hemingway, 67 Fed. Appx. 255, 257 (6th Cir. 2003)("Even if it is assumed that Green's allegations are true, the 'actual innocence' exception of the savings clause of § 2255, as it has been interpreted by this court, is 'actual innocence of the underlying, substantive offense, not 'innocence' of a sentencing factor.'"); White v. Rivera, 518 F.Supp.2d 752, 757 n.2 (D.S.C. 2007)("Furthermore, his 'actual innocence' argument concerning an enhancement does not entitle him to relief under § 2241, as it 'is not the type of argument that courts have recognized may warrant review under § 2241.'") (*quoting*, Davis v. United States, No. C/A8:05-2778, 2006 WL 89505, at *6 (D.S.C. Jan. 12, 2006)).

Even if, however, some mere sentencing claims (as opposed to claims attacking the conviction) were sufficient to establish the inadequacy of Section 2255, Petitioner's would not be sufficient because "the **only** sentencing claims that may conceivably be covered by the savings clause are those based upon a retroactively applicable Supreme Court decision overturning circuit precedent" such that the Section 2241 petitioner could not have previously brought the claim. Wofford v. Scott, 177 F.3d at 1245 (emphasis added). Obviously, Petitioner's claims are not based upon a retroactively applicable Supreme Court decision.

15

The second reason that Petitioner fails to establish the inadequacy of Section 2255 is that it simply does not strike the court as unfair, let alone, a miscarriage of justice, that Petitioner cannot now bring this sentencing claim. Petitioner faced a statutory minimum of 10 years or 120 months and a statutory maximum sentence of life imprisonment. U.S.A. v. Pollard, No. 1:02-cr-020 (N.D. Ill. Dkt. 18 at 7 to 8, ¶9).[8] Petitioner was sentenced to only 194 months and he had agreed to plead guilty to the crime, knowing full well that the United States' position was that Petitioner fell within the career criminal enhancement even though he disagreed. See id., at 6 to 7. Furthermore, he agreed that "the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence in the above calculations[,]" id., at 7, ¶ 7(F), which included the career criminal enhancement. These facts render this case one where no miscarriage of justice occurred insofar as Petitioner clearly bargained for the plea agreement, received benefits in exchange for the plea and knew fully well prior to entering into the agreement that the Government sought the enhancement of Petitioner as a career criminal and that the court could certainly find him to be a career criminal.

The third reason that the court is not convinced that Petitioner has established the inadequacy of Section 2255 is that unlike in Dorsainvil, where the Supreme Court was the final arbiter of the meaning of the federal criminal statute at issue therein and that court's construction could not be undone except prospectively by the Congress via an amendment to the statute, the case upon which Petitioner herein relies is a decision of the Sixth Circuit Federal Court of Appeals construing an Ohio criminal statute. The Sixth Circuit is not the final arbiter of the

---

[8] The docket and corresponding docket entries are available via PACER.

meaning of an Ohio criminal statute but the Ohio State Supreme Court is[9] and there is the distinct possibility that the Ohio Supreme Court could construe the statute otherwise. It appears that the intermediate appellate court of Ohio has done precisely that and construed the criminal statute under which Petitioner was convicted to evince an intent to sell or distribute. State v. Goodnight, 370 N.E.2d 486, 488 (Ohio App. 1977)(the then recently enacted applicable statute ". . . does not include the offense of possession for sale [as had the prior statute] but includes trafficking-possession offenses which contain the elements of possession of a controlled substance in various bulk amounts. Both the offense of possession with intent to sell under the old law and the offense of possession of amounts in excess of bulk amounts under the new statute are equivalent because they apply to sellers, dealers, pushers, and peddlers rather than mere users of controlled substances. . . . [T]he legislature merely substituted the element of bulk amount for the element of intent to sell."); State v. Carpenter, No. 7-88-1, 1989 WL 22030, at *6 (Ohio App. March 9, 1989)("We conclude that the legislature established by its enactment of R.C. 2925.03 its policy that the sale or intent to sell controlled substances constitutes trafficking

---

[9] Gruber v. Owens-Illinois Inc., 899 F.2d 1366, 1369 (3d Cir. 1990)("In interpreting state statutes, decisions of the state's highest court are binding upon us. *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967)"). Not even the United States Supreme Court has the authority to overturn a state supreme court's construction of a state statute. See, e.g., Albertson v. Millard, 345 U.S. 242, 244 (1953) ("The construction given to a state statute by the state courts is binding upon federal courts."); Cramp v. Board of Public Instruction of Orange County, 368 U.S. 278, 285 ("We accept without question this view [i.e., the State Supreme Court's view] of the statute's meaning, as of course we **must**.")(emphasis added); Ad World, Inc. v. Doylestown Tp., 672 F.2d 1136, 1142 (3d Cir. 1982)(Meanor, J., dissenting)("the state court's interpretation of an ordinance is 'as though written into the ordinance itself.'") (*quoting* Poulos v. New Hampshire, 345 U.S. 395, 402 (1952)).

    Of course, it goes without saying that it is for the federal courts to decide whether a state conviction under a particular state criminal statute constitutes a "controlled substance offense" for purposes of U.S.S.G. Section 4B1.1. However, once a state statute has been definitively found by the state's highest court to involve intent to distribute, the federal courts are thereby bound and can only say whether the statute as so defined by the state's highest court qualifies as a "controlled substance offense." What the federal court cannot do is read the intent element found to be there by the state Supreme Court out of the state statute.

and should be prohibited, and its policy and intent that possession for sale shall be presumed by possession of a specified minimum large quantity of a particular controlled substance, and that no defense to the conclusiveness of this presumption shall exist when possession is by virtue of prescription or for personal use, except only when the quantity charged does not exceed a single bulk amount and the other conditions of R.C. 2925.03(F) are satisfied."); State v. Hawkins, NO. 43849, 1982 WL 5912, at *2 (Ohio App. Aug 19, 1982). Indeed, even the Sixth Circuit Court, prior to Montanez, found the Ohio state courts' construction of the statute to be persuasive for the proposition that the statute involved an element of intent to distribute such as to qualify for the career criminal enhancement. Gibbs v. United States, 3 Fed.Appx. 404, 406 (6th Cir. 2001), in effect abrogated by, United States v. Montanez, 442 F.3d 485 (6th Cir. 2006). Hence, the Sixth Circuit's Montanez decision does not definitively and for all time, at least retrospectively, settle the fact that the predicate crime for which Petitioner was convicted did not necessarily involve an element of intent to distribute. Thus, it is entirely possible, even if unlikely, that Petitioner's 1983 Ohio conviction could ultimately be the kind of predicate conviction that would qualify one for career offender status, should the Ohio Supreme Court ever construe the criminal statute at issue differently than the Sixth Circuit has. If the Ohio Supreme Court decided such, and this Court or any court had granted Petitioner relief on the strength of the Sixth Circuit's construction of the Ohio criminal statute, Petitioner would have received a windfall. The possibility of this scenario adequately demonstrates, in this court's opinion, that Petitioner has not established the kind of miscarriage of justice required to bring a Section 2241 petition.

Accordingly, the petition should be dismissed without prejudice for lack of subject matter jurisdiction over this Section 2241 petition because Petitioner has not demonstrated that Section 2255 is inadequate or ineffective or, in other words, has not demonstrated the kind of miscarriage

of justice required in order to establish entitlement to proceed via a Section 2241 petition should his claim not be heard.

CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

                                                Respectfully submitted,

                                                */s/ Amy Reynolds Hay*
                                                United States Magistrate Judge

Dated: 10 October, 2008

cc:     The Honorable Kim R. Gibson
       United States District Judge

       Melvin Pollard
       20711-424
       FCI Loretto
       P.O. Box 1000
       Loretto, PA 15940

       All counsel of record via CM-ECF